UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carl Bergmann, Gerald Bestler,
James Roloff, and John Stehm,

        Plaintiffs,

v.                                           Civ. No. 05-963 (JNE/SRN)
                                                 ORDER

BMC Industries, Inc., Merle Kerr,
Peter Trembath, and Kenneth Lewis,

        Defendants.

Bruce C. Recher, Esq., and Joel D. Nesset, Esq., Henson & Efron, P.A., appeared for Plaintiffs Carl Bergmann, Gerald Bestler, James Roloff, and John Stehm.

Kevin P. Hickey, Esq., and Alan I. Silver, Esq., Bassford Remele, P.A., appeared for Defendants BMC Industries, Inc., Merle Kerr, Peter Trembath, and Kenneth Lewis.

Carl Bergmann, Gerald Bestler, James Roloff, and John Stehm (collectively, Plaintiffs) brought this case against BMC Industries, Inc. (BMC), Merle Kerr, Peter Trembath, and Kenneth Lewis (collectively, Defendants) for declaratory relief and breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). The case is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

**I.     BACKGROUND**

Plaintiffs are former employees of BMC, a manufacturer of optical lenses and aperture masks. Bergmann was corporate vice president and president of BMC's Optics Group. Bestler served as vice president of international operations, president of BMC's precision etched products group, and executive vice president and chief operating officer of BMC's operating

1

units. Roloff held the positions of machine operator, foreman, plant engineer, and operations manager in BMC's mask group. Stehm was a controller for a wholly-owned subsidiary of BMC.

In 1989, BMC established a Supplemental Executive Retirement Plan (SERP). Plaintiffs became participants in the SERP. The SERP reads in part:

> 1.2    Plan type.  The Plan is intended to be (and shall be construed and administered as) an employee pension benefit plan that is unfunded and is maintained by the Company primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. As such, the Plan is intended to be exempt from the provisions of Parts 2 through 4 of Title I and from Title IV of the Employee Retirement Income Security Act of 1974, as amended . . . .
>
> . . . .
>
> 5.1    Source of Benefit Payments.  . . . The Company, through the Trust and, to the extent not so paid, from its general assets, will pay all benefits arising under the Plan and all costs, charges and expenses relating thereto. Participants are neither required nor permitted to make contributions under the Plan.
>
> . . . .
>
> 5.3    Status of the Plan.  Neither the express terms of the Plan nor the operation or administration thereof shall be construed as providing for specific assets of the Company to be segregated, earmarked or otherwise held for the Participant or for any other person or persons to whom benefits are to be paid pursuant to the terms of this Plan, the Participant's only interest hereunder being the right to receive the benefits set forth herein. The Trust is established only for the convenience of the Company and the Participants to assure that benefit payments are not improperly withheld, and no Participant shall have any interest in the assets of the Trust prior to the distribution of such assets pursuant to the Plan. To the extent the Participant or any other person acquires a right to receive benefits under the Plan or Trust, such right shall be no greater than the right of any unsecured general creditor of the Company.

The SERP was accompanied by a 1989 Trust Agreement (Trust Agreement), or "rabbi trust," whose purpose was "to ensure that the benefits to which Participants are entitled under the terms of the Plan will not be improperly withheld."[1]  The Trust Agreement states,

---

[1] The Trust Agreement is the Trust referred to in the SERP.

"Notwithstanding any provision of this Trust Agreement to the contrary, Trust assets shall at all times be subject to the claims of the general creditors of the Company." In addition, the Trust Agreement provides:

> (17) Notwithstanding any provision of the Plan or any other provision of this Trust Agreement, in the event of bankruptcy of the Company, the Trustee shall not pay to the Participant any amount that represents the Participant's priority claim against Trust assets for wages or employee benefits in the bankruptcy proceedings, but the Trustee shall pay to the Participant such amounts to which such Participant is entitled as a general creditor of the Company in the bankruptcy proceedings.

On June 23, 2004, BMC and two subsidiaries filed for bankruptcy under Chapter 11 of the Bankruptcy Code. At that time, Plaintiffs stopped receiving payments under the SERP. On September 15, 2004, the bankruptcy court granted BMC's motion to reject the SERP pursuant to section 365 of the Bankruptcy Code. In December 2004, Plaintiffs submitted a stipulation to the bankruptcy court conceding that their status with respect to the trust assets is not superior to that of unsecured creditors. On February 17, 2005, the bankruptcy court granted Plaintiffs' motion for relief from an automatic stay on the condition that Plaintiffs only seek recovery from sources other than the debtors or the bankruptcy estate.

## II. DISCUSSION

In ruling on a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept the complaint's factual allegations as true and construe them in the light most favorable to the non-moving party. *Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993). The court will not dismiss the complaint unless it appears beyond doubt that the non-moving party cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*,

298 F.3d 736, 740 (8th Cir. 2002).[2]  When it appears from the face of the pleading that the statute of limitations has run, a limitations defense may properly be invoked in a motion to dismiss.  *See R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983).

Plaintiffs seek a declaration that the SERP was not a "top hat" plan[3] and that it was instead an employee pension benefit plan subject to the vesting, funding, and fiduciary conduct provisions of ERISA.  Plaintiffs also allege that Defendants breached their fiduciary duties under ERISA.  Defendants argue that Plaintiffs' claims should be dismissed because BMC's SERP is a top hat plan and therefore exempt from ERISA's fiduciary requirements.  Defendants also argue that Plaintiffs' fiduciary duty claims are barred by the statute of limitations.

The Court first considers whether Plaintiffs' claims for breach of fiduciary duty are barred by the statute of limitations.  In support of their claims, Plaintiffs assert that BMC, through the use of a misleading prospectus and various oral statements, misrepresented the terms of the SERP in 1989.[4]  Specifically, Plaintiffs claim that Defendants represented that the SERP was funded and its benefits were secure.  Further, Plaintiffs claim that BMC failed to correct their initial misrepresentations, to inform Plaintiffs of on-going risks to their retirement plans in the event BMC became insolvent, and to fund the plan.  Plaintiffs assert that they only learned of the alleged misrepresentations in 2004, when their SERP payments stopped.

---

[2]  Because the Court declines to consider evidence not embraced by the pleadings, the Court considers Defendants' motion as a motion to dismiss.

[3]  A top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).  Top hat plans are exempt from the participation, vesting, funding, and fiduciary responsibility provisions of ERISA.  *Id.*

[4]  Plaintiffs assert that they did not receive a copy of the SERP document in 1989.  Instead, they assert they received a "personal prospectus."  The prospectus contained "highlights" and a "summary" of the SERP.

4

Claims alleging violations of ERISA's fiduciary obligations are subject to the statute of limitations provided for in 29 U.S.C. § 1113:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of the breach of violation.

Defendants argue that Plaintiffs' claims are barred by the six-year statute of limitations of section 1113(1)(A) because the alleged misrepresentations occurred in 1989, more than six years before Plaintiffs brought this action. Plaintiffs argue that their claims are not barred under this section because Defendants committed a continuing violation by failing to correct their initial misrepresentations, to fund the SERP, and to inform Plaintiffs of the risk to their retirement benefits.

Under ERISA, "a continuous series of breaches may allow a plaintiff to argue that a new cause of action accrues with each new breach." *See Phillips v. Ala. Hotel & Rest. Employees Pension Fund*, 944 F.2d 509, 521 (9th Cir. 1991). This rule comports with the continuing violation theory employed in antitrust cases. *See, e.g.*, *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) (requiring a new and independent overt act that is not merely a reaffirmation of a previous act and that inflicts a new and accumulating injury on plaintiff to restart the statute of limitations). Here, the SERP was created in 1989, the allegedly misleading prospectus was provided to Plaintiffs in 1989, and Defendants' alleged oral misrepresentations

5

occurred contemporaneously with the creation of the SERP. The only other overt act alleged to have occurred after 1989 is a statement in 1992 by Robert Carlson, BMC's CEO at the time. Carlson allegedly represented that the SERP would continue to provide benefits in the event that BMC ever became insolvent or ceased operating. Even if this statement restarted the statute of limitations, it occurred more than six years before Plaintiffs brought this action.[5] No other new and independent acts related to Defendants' alleged misrepresentations or failure to fund are alleged in the Complaint. Thus, Defendants' alleged failure to correct misrepresentations and to fund the SERP did not restart the statute of limitations under section 1113(1)(A). *See Phillips*, 944 F.2d at 522-23 (O'Scannlain, J., concurring) (distinguishing a failure to remedy an alleged breach from the commission of a second breach; noting that a broad application of the "continuing violation" rationale would render superfluous the "actual knowledge" provision of section 1113(2)).

Plaintiffs also argue that Defendants could have cured the alleged continuing failure to provide a funded plan prior to the commencement of the bankruptcy case. Thus, it appears that Plaintiffs attempt to characterize the alleged failure to fund as an omission under section 1113(1)(B). The sole case relied on by Plaintiffs is *Pacific Insurance Co. v. Eaton Vance Management*, 260 F. Supp. 2d 236 (D. Mass. 2002), *rev'd in part and vacated in part*, 369 F.3d 584 (1st Cir. 2004). In *Pacific Insurance*, the administrator of a profit-sharing plan was unaware of a change in plan language that allegedly broadened the category of employees eligible to participate. *Id*. at 239. The plan administrator then failed to recognize employees who were eligible pursuant to the new language of the plan, to establish accounts in those employees' names, to provide those employees with information about the plan, or to inform those

---

[5] The Court notes that Carlson is not a named defendant in this action.

6

employees that they were eligible.  *Id*.  The court found that a failure to identify participants and fund accounts was an omission for purposes of determining whether the statute of limitations had run.  *Id.* at 247.

Here, however, Plaintiffs have not alleged that Defendants failed to fund the SERP in violation of the terms of the plan document or the Trust Agreement.  It is undisputed that the personal prospectus, which Plaintiffs received in 1989, provides that "[f]unding for the plan will be held in a 'Rabbi Trust' to secure the plan assets against a future management decision to arbitrarily redeploy these assets."  The parties agree that a "rabbi trust" is a legal term of art used in connection with top hat plans and that assets placed in such a trust are subject to the grantor's creditors.  There is no allegation that Defendants failed to fund the SERP through a "rabbi trust."  Instead, Plaintiffs claim that when they received the prospectus, they were unaware of what a "rabbi trust" was and that the risk and potential loss associated with the use of such a trust was not disclosed.  This allegation, however, does not demonstrate an omission by Defendants, particularly in light of the fact that Defendants disclosed how the SERP would be funded in the prospectus and funded it consistently with that disclosure.  Therefore, Plaintiffs cannot demonstrate any set of facts that would allow this Court to properly construe Defendants' alleged failure to fund as an omission and section 1113(1)(B) does not apply to Plaintiffs' claims.

Finally, Plaintiffs assert that section 1113's tolling provision in the case of fraud or concealment applies because they did not discover the alleged breaches of fiduciary duties until 2004.  In support, Plaintiffs claim the personal prospectus represented that the Plaintiffs had retirement protection, explained that the SERP would be "funded through investments," did not mention or refer to any other plan document, and did not use the words "top hat" plan.  Moreover, Plaintiffs claim they received verbal and written assurances of the security associated

7

with the SERP. The assurances allegedly caused Plaintiffs to believe their SERP benefits were to be paid for life and that their retirement income was secure.

The term "fraud or concealment" in section 1113 incorporates into ERISA the doctrine of fraudulent concealment. *See Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988); *see also Radiology Ctr. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (explaining that the phrase "fraud or concealment" refers to steps taken by a defendant to hide the fact of a breach of fiduciary duty rather than to the underlying nature of plaintiff's claim); *Hunt v. Magnell*, 758 F. Supp. 1292, 1298 (D. Minn. 1991) (citing *Schaefer*). To invoke section 1113's tolling provision, Plaintiffs must demonstrate that Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that Plaintiffs were not on actual or constructive notice of that evidence, despite Plaintiffs' exercise of due diligence. *See Schaefer*, 853 F.2d at 1491-92; *Hunt*, 758 F. Supp. at 1298.

Although Plaintiffs have generally alleged that Defendants misrepresented the SERP terms in 1989, they have not alleged facts that would demonstrate that Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing in 1989. Such concealment must rise to something more than a failure to disclose. *See Schaefer*, 853 F.2d at 1491. Moreover, Plaintiffs do not allege any facts demonstrating the exercise of due diligence on their part. On the contrary, Plaintiffs contend that they had no reason to question the security of the SERP prior to 2004. Plaintiffs also claim that they were unaware of the existence of the SERP document. Plaintiffs, however, were in possession of the prospectus, which contained "Highlights of BMC's Supplemental Plan (SERP)" and a SERP summary. The prospectus refers to a more comprehensive plan. Yet there is no allegation that Plaintiffs requested a copy of the complete plan. Furthermore, as discussed above, the personal prospectus provides that

"[f]unding for the plan will be held in a 'Rabbi Trust.'"  While Plaintiffs acknowledge that assets placed in a "rabbi trust" are subject to the grantor's creditors, they claim that in 1989 they were unaware of the risks associated with the use of such a trust.  That Plaintiffs were unaware of, or failed to investigate, the implications of the use of a "rabbi trust" does not support their allegations that Defendants engaged in fraudulent concealment.  Instead, it highlights Plaintiffs' failure to allege facts demonstrating the exercise of due diligence.

Plaintiffs do allege that in 1992, Robert Carlson, BMC's CEO at the time, represented to Bestler that the SERP would continue to provide benefits in the event that BMC ever became insolvent or ceased operating.  This alleged statement, however, alone does not invoke the "fraud or concealment" statute of limitations because Plaintiffs do not allege any facts as to Bestler's exercise of due diligence.  The "fraud or concealment" statute of limitations does not apply.

In sum, neither section 1113(1)(B)'s nor the "fraud or concealment" limitations period applies to Plaintiffs' claims.  Further, Plaintiffs' claims are barred by section 1113(1)(A). Because Plaintiffs' fiduciary duty claims are time-barred, Plaintiffs' remaining claim for declaratory relief is moot.

### III.    ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.  Defendants' motion to dismiss [Docket No. 6] is GRANTED.

2.  Plaintiffs' Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 20, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
